### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SODEXO OPERATIONS, LLC | : |
| *Plaintiff*, | : |
| v. | : Case No.: 2:21-cv-1856 |
| UNIVERSITY OF PITTSBURGH – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, | : |
| *Defendant*. | : |

## COMPLAINT

Plaintiff SODEXO OPERATIONS, LLC ("Sodexo"), by and through its undersigned attorneys, brings this action against Defendant UNIVERSITY OF PITTSBURGH – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION ("UPitt"), and alleges as follows:

## NATURE OF THE ACTION

1. This case arises out of UPitt's breach of its contractual obligations under two food service agreements for Sodexo's provision of food service and beverage operations at UPitt's Oakland and Johnstown campuses, respectively. UPitt has failed to pay outstanding amounts due under the two agreements in clear breach of its obligations.

2. Notwithstanding the long-term relationship between UPitt and Sodexo, UPitt took unjust advantage of Sodexo's willingness to take extraordinary steps to service students during the height of the pandemic. UPitt variously directed Sodexo to prepare for the sheltering in place of the whole student body, anticipate the return of only 4000 students, then 1500, and then 200 and to open and close various points of food service. UPitt did so knowing full well that, with no students on campus, Sodexo was deprived of revenue. As a result of UPitt's actions, Sodexo

incurred millions of dollars in additional inventory and labor charges for which UPitt has refused to reimburse or otherwise compensate Sodexo, despite numerous requests.

3. Faced with UPitt's intransigence, Sodexo brings this action for breach of contract—or, in the alternative, unjust enrichment—to recover in excess of $7 million of compensatory damages, including late charges on undisputed amounts not paid when due, plus interest.

## PARTIES

4. Plaintiff Sodexo Operations, LLC is a limited liability company. Its sole member is a Delaware corporation with a principal place of business in Maryland.

5. Defendant University of Pittsburgh – of the Commonwealth System of Higher Education is a state-related, non-profit corporation, incorporated under the laws of the Commonwealth of Pennsylvania and having its principal place of business in Pittsburgh, Pennsylvania.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs, and complete diversity of citizenship exists because the Plaintiff and the Defendant are citizens of different states.

7. This Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in this District.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant resides, and a substantial part of the actions, failures, events, and/or omissions giving rise to the claim occurred, in this judicial District.

**FACTUAL ALLEGATIONS**

I.     **The Oakland Campus**

9.     On or about July 1, 2007, Sodexo and UPitt entered a written food services agreement for Sodexo to manage and operate food service and beverage operations for students, faculty, staff, and guests at UPitt's campus in the Oakland neighborhood of Pittsburgh (as amended, the "Oakland Agreement" or "OA").

10.     The original five-year term of the Oakland Agreement was extended multiple times over the years.  On or about July 6, 2017, the parties extended the term of the Oakland Agreement through June 30, 2020, with a provision allowing for further annual extensions.

11.     Sodexo performed under the Oakland Agreement.

12.     Because UPitt declined to further extend the Oakland Agreement, it expired on or about June 30, 2020.

13.     As of June 2021, UPitt owed Sodexo approximately $2.9 million in board charges and other expenses incurred under the Oakland Agreement (the "Amount Owed").  On or about June 22, 2021, UPitt paid Sodexo $647,867.55 of the Amount Owed (the "Partial Payment").  In making the Partial Payment, UPitt improperly deducted or offset certain amounts from the Amount Owed and failed to include approximately $2.3 million in other amounts due and owing for open invoices, reimbursement, and late charges due under the Oakland Agreement and other agreements between the parties.

14.     In March 2020, the full impact of the Covid-19 pandemic became apparent.  UPitt directed Sodexo to have inventory (food, supplies, and other items) on-hand and to reserve labor in preparation for the return of students from Spring Break and to ensure compliance with UPitt's COVID-19 response measures.

15. In late-March and April 2020, UPitt announced that students were not to return to campus following Spring Break, thereby disrupting Sodexo's source of revenue under the Oakland Agreement. UPitt nevertheless directed Sodexo to stock inventory and operate with sufficient staffing various points of food service for the small number of students that remained on campus. Sodexo complied with UPitt's directives in good faith and with the expectation that it would be compensated. As a result, Sodexo incurred additional costs of approximately $2,668,056.45 in raw materials and $2,905,585.91 in staffing changes and additions, without any revenue from the on-campus food service contemplated by the Oakland Agreement to offset those charges.

  A. **Outstanding Board and Expenses Owed to Sodexo under the Oakland Agreement**

16. In making its Partial Payment, UPitt improperly deducted or offset amounts from the Amount Owed and failed to include other amounts due to Sodexo for open invoices, reimbursement, and late charges due and owing under the Oakland Agreement and other agreements regarding food service at facilities on the Oakland campus as follows:

  (i) <u>The Renovation Fund</u>

17. The Oakland Agreement established a Renovation Fund for which Sodexo agreed to accrue funds from September through May each year for improvements to the dining areas. (OA, Art. 7.13). Sodexo paid the Renovation Fund in annual installments to UPitt in June of each year. In a University of Pittsburgh Contract Adjustment Language document, dated June 28, 2017 (the "Contract Adjustment"), and signed by both parties, the Renovation Fund was extended for three years, totaling $4,875,000, to be paid in three installments in June 2018, 2019, and 2020.

18. Sodexo paid the Renovation Fund installments of $1,575,000 and $1,625,000 in June 2018 and 2019, respectively.

19. From September 2019 through February 2020, Sodexo accrued $1,107,105 in funds for the Renovation Fund installment due in June 2020, but ceased accruing funds when UPitt suspended its on-campus operation in March 2020.

20. UPitt's on-campus operation was a basic fact underlying the Oakland Agreement generally and the establishment of the Renovation Fund specifically.  Sodexo's revenue stream and its ability to accrue funds for improvements to UPitt's dining services was almost entirely dependent on students residing on campus.

21. The basic fact is clear from the Oakland Agreement itself, which identified its purpose as engaging Sodexo to provide "campus food service" for "students, faculty, staff and guests of the University"; defined "Board Plan" as a range of meal plans "available while the University's residence halls are operational during the University's Fall and Spring academic terms"; identified the facilities and activities around which the University's food service program is structured, all of which were on campus; and premised payment for Sodexo's services on the number of students participating in Board Plans, which were mandated for "resident students."

22. The Oakland Agreement established the Renovation Fund based on Sodexo "accru[ing] funds for improvements to the dining areas" "from September through May of each year of this Agreement."  Sodexo's obligation to accrue funds during the months from September through May aligned with UPitt's Fall and Spring academic terms when UPitt's residence halls were "operational" and the Board Plan, from which Sodexo drew its revenue stream, was available.  In addition, the Renovation Fund accrual account was explicitly linked to

the food service program, which operated on-campus, through its designation as an expense of that operation.

23. In March 2020, UPitt first directed Sodexo to prepare for the sheltering in place of the whole student body upon the return of students after Spring Break. A week later, UPitt directed its students not to return to campus following Spring Break.

24. As a result, the Oakland Agreement's on-campus food service operation, including the Board Plan, was effectively discontinued and fundamentally altered. Sodexo could not "accrue" funds for the Renovation Fund from March through May 2020. Accordingly, Sodexo pro-rated the June 2020 Renovation Fund installment to correspond with the months from "September [2019] through May [2020]" when the food service was in operation, that is, from September 2019 through February 2020. Sodexo accrued funds in the pro-rated amount of $1,107,105.

25. Not only was the Oakland Agreement and the establishment of the Renovation Fund premised on the basic fact of an on-campus, food service operation, but the Oakland Agreement's *force majeure* clause excuses Sodexo's inability to accrue funds during the period from March through May 2020.

26. The Oakland Agreement defines "*force majeure*" to mean "any act, event, cause or occurrence rendering a party unable to perform its obligations which is not within the reasonable control of such party," and excuses a party's performance of its obligations when the party is unable by *force majeure* to perform (OA, Art. 10.5).

27. The World Health Organization declared COVID-19 a public health emergency in January 2020 and elevated that designation to a "worldwide pandemic" on March 11, 2020. On March 11, 2020, UPitt told students not to return to campus following Spring Break and that

online instruction would replace in-person learning for the remainder of the semester. The Governor of Pennsylvania closed schools on March 12, 2020, and issued a stay-at-home order on March 19, 2020, which was not lifted until after May 2020. Due to the pandemic, UPitt's directives, and the Governor's orders, which were events clearly beyond Sodexo's control, Sodexo was excused from accruing funds for improvements to the dining services from March through May 2020, when students were not resident on campus and the food service operation was effectively suspended.

28. UPitt improperly deducted $1,625,000 from the Amount Owed in making the Partial Payment, instead of the pro-rated amount of $1,107,105 that Sodexo actually accrued from September 2019 through February 2020. UPitt owes Sodexo the difference in value of $567,895, because on-campus operation was a basic fact underlying the Oakland Agreement and specifically the Renovation Fund and thus Sodexo's obligation to accrue funds was suspended once UPitt directed students not to return to campus, and because Sodexo's performance in accruing funds for the Renovation Fund was excused between March and May 2020 due to *force majeure*.

        (ii)    <u>The Equipment Fund</u>

29. In calculating the Partial Payment, UPitt improperly deducted $75,000 in Equipment Fund expenses, which it claimed Sodexo was obligated to pay. Unlike the Renovation Fund, which was expressly extended in the Contract Adjustment in June 2017 for three more years, the Equipment Fund established under the Oakland Agreement was not extended beyond 2017.

30. Because Sodexo was not contractually obligated to pay the $75,000 in Equipment Fund expenses, UPitt should not have offset that amount from its payment of the Amount Owed

to Sodexo.  UPitt owes Sodexo the $75,000 value of the discontinued Equipment Fund that it improperly deducted in its Partial Payment.

        (iii)    <u>Catering Deposit Refunds</u>

31.    During the term of the Oakland Agreement, Sodexo collected $261,585 in catering deposits from outside groups for events which were scheduled or re-scheduled for dates post-expiration of the Oakland Agreement.  Sodexo refunded $23,186 directly to the outside groups, reducing the amount of catering deposits that Sodexo agreed to turnover to UPitt and its new food service provider from $261,585 to $238,399.  UPitt, however, improperly deducted the full $261,585 in catering deposits from the Amount Owed in making its Partial Payment.  Accordingly, UPitt owes Sodexo the $23,186 value of the already refunded catering deposits.

        (iv)    <u>Maintenance Billing</u>

32.    The Oakland Agreement provided that Sodexo would pay to UPitt in twelve monthly installments certain fixed charges for line items included in the Food Service Proforma (*i.e.,* general repairs/maintenance, trash removal, pest control, and vehicle leases) for UPitt's performance of necessary routine preventive and emergency maintenance and repairs of the food service equipment and for pest control and trash removal (OA, Art. 7.4).

33.    The amount of the fixed charge for such items was premised upon the continued, on-campus operation of UPitt.  From mid-March through June, when UPitt effectively suspended its food service operation, such routine preventive and emergency maintenance and repairs was unnecessary, and thus Sodexo's obligation to pay the monthly installments was suspended and excused.  Nevertheless, Sodexo paid the monthly maintenance installments for April and May 2020, totaling approximately $60,270, for which UPitt therefore owes it reimbursement.

34. In addition, UPitt improperly offset an additional $45,928 in such maintenance billing for June and other expenses from the Amount Owed when making its Partial Payment. Therefore, UPitt owes Sodexo a total of $106,198, in reimbursement ($60,270) and the value of improperly deducted maintenance billing and other expenses ($45,928).

        (v)     <u>Open Invoices</u>

35. UPitt has failed to pay approximately $12,465.49 in outstanding invoices for food services, including catering, provided at the Oakland campus from June 2018 through June 30, 2020, in breach of its obligation to pay invoices and to pay them within thirty days after receipt (OA, 8.1). UPitt did not include payment for these open invoices in its Partial Payment in June 2021.

        (vi)    <u>Late Charge</u>

36. Under the Oakland Agreement, a late charge of 1.5% per month begins to accrue on the sixty-first calendar day following the invoice date on any outstanding balance of any invoice undisputed and unpaid (OA, Art. 8.1.1). UPitt did not dispute $647,867.55 of the more than $2 million in board invoices open through 2020. Nevertheless, UPitt did not pay the undisputed $647,867.55 until June 2021, and therefore owes Sodexo 1.5% per month on that amount in late charges for a total amount of $98,085.37.

        (vii)   <u>Other Amounts Owed</u>

37. UPitt improperly deducted or offset other amounts from the Amount Owed and failed to pay other amounts in open invoices, reimbursement, and late charges due and owing under the Oakland Agreement and other agreements regarding food service at facilities on the Oakland campus, such as the Petersen Events Center Food Services Agreement, dated July 1, 2000, renewed by letter agreement, dated February 24, 2012, and modified by the Contract

Adjustment (the "Petersen Events Center Agreement"), in amounts to be determined at trial but not less than $6,779.79.

**B.     Additional Inventory and Labor Charges Incurred at UPitt's Request**

(i) <u>Additional Inventory Costs</u>

38.     In conversations and meetings through on or about March 10, 2020, UPitt, namely, Matthew Stern, Joe Beaman, Julie Bannister, and others, directed Sodexo to prepare for the return of students to the Oakland campus by instructing Sodexo (a) to have three weeks of food inventory on hand for the campus population to facilitate the student body sheltering in place; (b) to stock and open the main dining halls as the primary points of food service; and (c) to be ready for the potential rescheduling of events in April and then late May or early June at the Petersen Event Center.

39.     Sodexo complied with UPitt's directives to prepare for the return of all students, to have three weeks of food inventory on hand, to open the main dining halls as the primary points of service, and to be ready for events whenever rescheduled, by acquiring in excess of one million dollars in on-hand inventory of raw materials, including food, paper, and cleaning products, primarily for the main dining halls.

40.     Over the course of the next week, UPitt reversed its directives, by announcing that students were not to return to campus, that the main dining halls were temporarily closed, by instructing Sodexo to open other points of service, including Quick Zone, Forbes Street Market, Chick Fil A, and other coffee and convenient stores, and to anticipate food service for over 4,000 international students on campus through commencement.

41.     Sodexo again complied with UPitt's new directives, pivoting to the different points of service, by acquiring hundreds of thousands of dollars of the different inventory needed

to operate those venues for the anticipated resident population of over 4,000 international students.

42. Over the next few weeks, in telephone calls and other communications, UPitt, namely Matthew Stern, Joe Beaman, and others, gradually stepped back the list of food service venues that it directed to remain open and operating as students did not return to campus. UPitt changed its student population estimate, instructing Sodexo to anticipate 1,200-1,500 students on campus, rather than over 4,000, but in actuality Sodexo served only approximately 200 students per day.

43. Sodexo offered to continue providing food services to UPitt on a cost of operations model. UPitt did not respond to Sodexo's offer for approximately 6 weeks, during which time Sodexo continued to provide services in good faith. UPitt ultimately declined the offer.

44. UPitt unilaterally decided to refund the declining balance revenue from the meal plans to students further interfering with Sodexo's revenue stream.

45. In approximately mid-April to May 2020, UPitt again changed its protocols, locking down various facilities and venues. As a result, Sodexo was prohibited from entering venues where it had inventory.

46. Due to UPitt's directives and changing instructions, Sodexo was unable to implement its normal contract exit strategy, for example, adjusting menus to use inventory on hand and winding down operations once UPitt elected not to renew the Oakland Agreement. Because it was locked out of venues, Sodexo was unable to transfer inventory to other venues or otherwise dispose of it. Tens of thousands of dollars of inventory was stranded in various venues. Because other institutions and retail outlets were shut down during the pandemic, few

options existed for the transfer or return of inventory.  When Sodexo was finally permitted to re-enter facilities in approximately late May to June, 2020, some perishables had to be thrown away, some product was donated to churches or hospital, and a small amount of inventory was transferred to other facilities or returned at a steep discount.

47.     From approximately March through June 2020, Sodexo incurred additional inventory costs totaling approximately $2,668,056.45 to comply in good faith with UPitt's changing directives and protocols.  During that same period, Sodexo's revenue stream under the Oakland Agreement, which depended almost entirely upon an on-campus resident population of thousands, was reduced to a trickle.

48.     UPitt has refused to pay Sodexo for any portion of the added inventory costs incurred by Sodexo in good faith as a result of UPitt's changing requests, demands, instructions, and directives during the period from March through June 2020 and which Sodexo supplied for UPitt's benefit.

(ii) Additional Labor Costs

49.     In March 2020, UPitt specifically directed Sodexo to align its staffing at the Oakland campus to meet UPitt's response to the COVID-19 crisis.  UPitt instructed Sodexo to be ready to operate whichever points of service UPitt decided to open.  Sodexo complied with UPitt's directive by instituting and committing to a workgroup staffing protocol that ensured three distinct teams of managers and hourly team members, each of which were insulated from the other two and on-call if one, or both, of the other groups were compromised with COVID-19 exposure.

50.     UPitt issued changing directives to Sodexo about how many resident students to anticipate and which venues to open.  As a result, Sodexo was not only required to maintain

three distinct teams but to maintain more staff, including more managers, than necessary to serve the approximately 200 students that remained on campus and to maintain staff at multiple venues with shifting hours and operating schedules and where sales were negligible.

51. As a result of UPitt locking out Sodexo from certain campus facilities in mid-April to May 2020, Sodexo was left in a holding pattern. It was required to maintain staff that it otherwise would have discharged to prepare to clean, organize, and turn over the multiple food service facilities to a new provider before the Oakland Agreement expired.

52. As noted above, Sodexo offered to continue providing food services to UPitt on a cost of operations model. UPitt did not respond to Sodexo's offer for approximately 6 weeks, during which time Sodexo continued to provide services in good faith. UPitt ultimately declined the offer.

53. Sodexo incurred approximately $2.9 million in labor costs during the period from March through June 2020. During that same period, Sodexo's revenue stream under the Oakland Agreement slowed to a trickle as a result of UPitt's diminished resident population.

54. Because Sodexo incurred additional labor costs at UPitt's request and for its benefit, while preventing Sodexo from generating revenue under the Oakland Agreement or otherwise, UPitt is liable for those costs in an amount to be determined at trial.

**II.   The Johnstown Campus**

55. On or about June 10, 2016, Sodexo and UPitt entered a written food services agreement for Sodexo to manage and operate food service and beverage operations for students, faculty, staff, and guests at UPitt's campus in Johnstown (as amended, the "Johnstown Agreement"), which superseded a previous food services agreement entered in July 2008. The

Johnstown Agreement was for a five-year term through June 30, 2020, with provision for an additional five-year term.

56.     The Johnstown Agreement expressly provided that its financial terms were based upon three assumptions: (i) that the resident population was not less than 1,500; (ii) that annual catering/conference sales were not less than $850,000; and (iii) that operating days were not less than 207 boarding days.  The Johnstown Agreement further provided: "In the event of a change in assumptions, the financial terms shall be subject to adjustment" (JA, Art. 7.15).

57.     Sodexo performed under the Johnstown Agreement.

58.     In accordance with the Johnstown Agreement, Sodexo provided food services at the Johnstown campus, including a Board Plan, defined as "a range of meal plans available while Johnstown's resident halls are operational, generally mandated for resident students . . . " (JA, Art. 3.1), and Conference and Catering Services (JA, Arts. 3.1.3 & 3.1.4).

**A.     Johnstown Board Plan Service**

59.     Exhibit D to a Memorandum of Understanding dated August 26, 2019, contained the Board Daily rates for 2019-2020 ("Exhibit D").  Exhibit D specified rates for a resident population between 1800 to 1200, and if the resident population fell below 1200 or rose above 1800, the rate was "to be negotiated."

60.      Pursuant to the Johnstown Agreement, Sodexo provided food service, including the Board Plan, through May 31, 2020.

(i) <u>March 2020 Board Plan Service</u>

61.     Sodexo billed UPitt weekly for Board Plan service through April 3, 2020.

62.     Pursuant to the Johnstown Agreement, payment by UPitt to Sodexo was due within thirty (30) days after receipt of a Board Plan invoice (JA, Art. 8).

63. For the eighteen board days between March 14 and April 3, 2020, Sodexo billed UPitt pursuant to Exhibit D in three weekly invoices, dated March 23, April 1, and April 2, 2020, totaling $304,628.24 (the "March invoices"). The March invoices became due and owing thirty (30) days after receipt by UPitt.

64. UPitt has failed to pay Sodexo the approximately $304,628.24 or any portion of the March invoices.

(ii) <u>April 2020 Board Plan Service</u>

65. In March 2020, UPitt directed its students not to return to campus following Spring Break. As a result, in April 2020, the resident population on the Johnstown campus fell below 1200 to approximately 48 – 22 students.

66. Sodexo repeatedly reached out to UPitt to negotiate a revised Board Daily rate or another rate for the below-threshold number of campus residents. Notwithstanding Sodexo's repeated efforts to engage UPitt, UPitt declined to negotiate. UPitt, however, requested that Sodexo continue to provide food service, which Sodexo did in good faith.

67. Sodexo provided food service, including the Board Plan, through May 31, 2020, when Sodexo and UPitt agreed that Sodexo would cease food service operations. During the period from April 4 through May 31, 2020, Sodexo provided twenty-two board days of service (all or nearly all, in April) to the resident population (the "April board days").

68. UPitt has failed to pay Sodexo for any of the twenty-two April board days. Using the same rate applied to the March invoices, UPitt owes Sodexo a total of approximately $401,873.56 for the twenty-two April board days.

69. In sum, UPitt owes Sodexo a total of approximately $706,501.80 for the March invoices ($304,628.24) and the twenty-two April board days ($401,873.56).

  **B.**  **Johnstown Catering and Conference Sales**

  70.  Pursuant to the Johnstown Agreement, Sodexo was obligated to provide catering and conference services at the Johnstown campus.  The financial terms of the Johnstown Agreement were explicitly based on a guaranteed annual minimum of $850,000 in catering and conference sales from July through June (JA, Art. 7.15).

  71.  Sodexo performed under the Johnstown Agreement, providing, and standing ready to provide, catering and conference services throughout its term.

  72.  From July 2019 through June 2020, catering and conference sales at the Johnstown campus totaled approximately $630,831, meaning there was a shortfall of approximately $219,169 from the Johnstown Agreement's guaranteed annual minimum of $850,000.  Accordingly, UPitt owes Sodexo approximately $219,169 to make up the shortfall in the annual minimum upon which the financial terms of the Johnstown Agreement were explicitly based.

## COUNT I
### (Breach of Contract)

  73.  Sodexo adopts and incorporates Paragraphs 1 through 72 above as if set forth fully herein.

  74.  The Oakland Agreement between Sodexo and UPitt constituted a written, express contract.

  75.  Sodexo performed under the Oakland Agreement.

  76.  The Oakland Agreement obligated UPitt to (a) pay invoices and expenses; (b) pay invoices within 30 days of receipt; (c) pay interest at the monthly rate of 1.5% on undisputed amounts not paid within 60 days; and (d) act in good faith and deal fairly with Sodexo.

77. UPitt breached the Oakland Agreement by failing to pay invoices and expenses, by failing to timely pay invoices and expenses when owed; by improperly deducting amounts from its June 2021 Partial Payment; by failing to pay interest on undisputed amounts not paid within 60 days; and by directing Sodexo to take actions during the pandemic for UPitt's benefit, at a cost to Sodexo of millions of dollars, knowing that Sodexo would not and could not receive the benefit of its bargain because its revenue stream under the Oakland Agreement depended almost entirely on students residing on-campus.

78. As a direct and proximate result of UPitt's breach of the Oakland Agreement, Sodexo has incurred monetary damages exceeding $7 million in an amount to be proved at trial.

### COUNT II
### (Breach of Contract)

79. Sodexo adopts and incorporates Paragraphs 1 through 78 above as if set forth fully herein.

80. The Johnstown Agreement between Sodexo and UPitt constituted a written, express contract.

81. Sodexo performed under the Johnstown Agreement.

82. The Johnstown Agreement obligated UPitt to (a) pay the March invoices for the Board Plan service provided by Sodexo; (b) pay the March invoices within 30 days of receipt; (c) to negotiate a Board Daily rate when the number of students fell below 1200; (d) pay Sodexo for the April Board days; and (e) make up the $219,169 shortfall in the guaranteed annual minimum $850,000 in catering and conference sales.

83. UPitt breached the Johnstown Agreement by failing to pay the March invoices, by failing to timely pay the March invoices within 30 days of receipt; by refusing to negotiate a new Board Daily rate when the number of students fell below 1200; by failing to pay Sodexo for the

April Board days of service; and by failing to make up the $219,169 shortfall in guaranteed annual catering and conference sales.

84. As a direct and proximate result of UPitt's breach of the Johnstown Agreement, Sodexo has incurred monetary damages exceeding $925,000 in an amount to be proved at trial.

## COUNT III
### (Breach of Implied Contract)

85. Sodexo adopts and incorporates Paragraphs 1 through 84 above as if set forth fully herein.

86. A valid and enforceable contract implied from the parties' conduct existed between UPitt and Sodexo. UPitt requested and directed Sodexo to prepare for the students' return to campus and to shelter in place, to open and operate various, changing points of food service, and to be ready for rescheduled events from March through June 2020. Sodexo complied with UPitt's requests and directives upon the understanding and expectation it would be compensated.

87. Sodexo performed under the implied contract.

88. The implied contract obligated UPitt to compensate Sodexo for the inventory and labor charges Sodexo incurred in complying with UPitt's requests and directives regarding the students return to campus, preparing to shelter in place, opening and operating various changing points of food service, and being ready for rescheduled events from March through June 2020.

89. UPitt breached the implied contract by failing to compensate Sodexo for the inventory and labor charges incurred.

90. As a direct and proximate result of UPitt's breach of the implied contract, Sodexo has incurred monetary damages exceeding $5.5 million in an amount to be proved at trial.

## COUNT IV
## (Unjust Enrichment)

91. Sodexo adopts and incorporates Paragraphs 1 through 90 above as if set forth fully herein.

92. From March to June 2020, Sodexo conferred benefits upon UPitt by complying with UPitt's changing directives regarding the students return to campus, preparing to shelter in place, opening and operating various changing points of food service, and being ready for rescheduled events at a cost to Sodexo of over $5.5 million.

93. Sodexo complied with UPitt's directives and performed services in good faith as part of a shared mission to take care of UPitt students and UPitt interests during the pandemic with the expectation that it would be compensated in the form of reimbursement of its costs or otherwise.

94. UPitt appreciated such benefits as it specifically directed and re-directed Sodexo to take actions to meet its response to the COVID-19 crisis, depriving Sodexo of its revenue stream.

95. UPitt accepted and retained the benefits of Sodexo's purchases of inventory, provision of food services, and staffing retention and realignment, and was enriched at Sodexo's expense.

96. UPitt's acceptance and retention of the benefits conferred by Sodexo without reimbursement or payment under such circumstances would be inequitable. Sodexo had a reasonable expectation of compensation in the form of reimbursement of costs incurred as a result of complying with UPitt's directives and requests and providing inventory, staff, and food services at multiple venues despite few sales and without the revenue stream contemplated under

the Oakland Agreement.  Equity and good conscience require restitution of the benefits conferred in an amount to be proved at trial.

## PRAYER FOR RELIEF

Whereupon, Sodexo prays:

(a) that the Court exercise jurisdiction over this action;

(b) that the Court award compensatory damages to Sodexo in an amount to be determined at trial but not less than $7 million;

(c) that the Court award Sodexo pre-judgment and post-judgment interest; and

(d) that the Court award such further relief as the Court deems just and proper.

Dated: December 23, 2021

          Respectfully submitted,

          THE LAW OFFICES OF
          STEPHEN S. STALLINGS, ESQ.

By: */s/Stephen S. Stallings*
     Stephen S. Stallings
     PA ID #205131
     310 Grant Street – Suite 3600
     Pittsburgh, PA 15219
     Phone: (412) 322-7777
     Fax: (412) 322-7773
     attorney@stephenstallingslaw.com

Of Counsel:

AEGIS LAW GROUP LLP
Michael K. Ross (*pro hac vice* motion forthcoming)
Alison Van Horn (*pro hac vice* motion forthcoming)
801 Pennsylvania Ave., N.W., Suite 740
Washington, D.C. 20004
Tel: (202) 737-3500
Fax: (202) 735-5071
mross@aegislawgroup.com
avanhorn@aegislawgroup.com

*Attorneys for Plaintiff*