**IN THE UNITED STATES DISTRICT COURT FOR**
**THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| SODEXO OPERATIONS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-1856 |
| vs. | ) | |
| | ) | Judge Robert J. Colville |
| UNIVERSITY OF PITTSBURGH – OF | ) | |
| THE COMMONWEALTH SYSTEM OF | ) | |
| HIGHER EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

**UNIVERSITY OF PITTSBURGH'S BRIEF**
**IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**<u>TABLE OF CONTENTS</u>**

**Page**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ............................................................................................... 2

LEGAL STANDARD ........................................................................................................... 4

ARGUMENT ........................................................................................................................ 5

A.      Sodexo Fails to State a Claim for Breach of Contract Related to the Oakland Agreement
        (Count I). .............................................................................................................. 5

B.      Sodexo Fails to State a Claim for Breach of Contract Related to the Johnstown
        Agreement (Count II). ........................................................................................ 10

C.      Sodexo Fails to State a Claim for Breach of Implied Contract (Count III). ...... 11

D.      Sodexo Fails to State a Claim for Unjust Enrichment (Count IV). ................... 13

CONCLUSION ................................................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ALA, Inc. v. CCAIR, Inc.*,
  29 F.3d 855 (3d Cir. 1994)...................................................................................5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................4, 5, 7

*In re Burlington Coat Factory Sec. Litig.*,
  114 F.3d 1410 (3d Cir. 1997).................................................................2

*D.A. Hill Co. v. Clevetrust Realty Inv'rs*,
  573 A.2d 1005 (Pa. 1990).......................................................................15

*Del. Cnty. Chamber of Commerce v. USI Ins. Servs., LLC*,
  2013 WL 6847001 (E.D. Pa. Dec. 30, 2013)..........................................16

*Donnelly v. Kole*,
  2010 U.S. Dist. LEXIS 164740 (E.D. Pa. Oct. 15, 2010).........................6

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
  232 F.3d 173 (3d Cir. 2000)....................................................................5

*Harris v. St. Johns Univ.*,
  2014 US Dist. LEXIS 65452 (E.D. Pa. May 13, 2014) ...........................6

*Hart v. Univ. of Scranton*,
  2012 WL 1057383 (M.D. Pa. March 28, 2012)...............................12, 13

*Hickey v. Univ. of Pittsburgh*,
  535 F. Supp. 3d 372 (W.D. Pa. 2021).............................................14, 16

*Hirsch v. Schiff Benefits Group, LLC*,
  2011 WL 1166127 (E.D. Pa. Mar. 28, 2011)...................................12, 13

*Icynene v. Next Generation Insulation, LLC*,
  2020 WL 2198977 (E.D. Pa. May 6, 2020) ..............................................4

*Lenhart v. Huntington Ins., Inc.*,
  2016 U.S. Dist. LEXIS 75415 (W.D. Pa. June 8, 2016), *report adopted*, 2016
  U.S. Dist. LEXIS 83671 (W.D. Pa., June 28, 2016)....................6, 11, 12

*Longnecker-Wells v. Benecard Servs.*,
  658 Fed. App'x. 659 (3d Cir.) ................................................................................13

*Myers Plumbing and Heating Supply Co. v. West End Fed. Sav. & Loan Ass'n*,
  498 A.2d 966 (Pa. Super. 1985) .............................................................................15

*In re Penn. Cent. Transp. Co.*,
  831 F.2d 1221 (3d Cir. 1987) .................................................................................12

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
  998 F.2d 1192 (3d Cir. 1993) ...................................................................................2

*Third Nat'l Bank & Trust Co. v. Lehigh Valley Coal Co.*,
  353 Pa. 185 (Pa. 1945) ...........................................................................................16

*Vurimindi v. Fuqua School of Business*,
  435 Fed. Appx. 129 (3d Cir. 2011) ........................................................................13

*Wilson v. Parker*,
  227 A.3d 343 (Pa. Super. 2020) .............................................................................14

*Yourway Transp., Inc. v. Sunovian Pharm., Inc.*,
  2019 WL 1574315 (E.D. Pa. Apr. 11, 2019) .........................................................14

*Zvonik v. Zvonik*,
  435 A.2d 1236 (Pa. Super. 1981) ...........................................................................16

**Rules**

Fed. R. Civ. P. 10(b) ...................................................................................................5

## INTRODUCTION

Plaintiff Sodexo Operations, LLC ("Plaintiff" or "Sodexo") provided food and beverage services to Defendant, the University of Pittsburgh – of the Commonwealth System of Higher Education ("Pitt" or "the University") from 2007 through June 30, 2020. Pitt opted not to extend its contracts with Sodexo beyond June 30, 2020. As Sodexo grappled with the loss of a significant client and the wind-down of the relationship, the COVID-19 pandemic suddenly and unexpectedly impacted the world, Sodexo, Pitt, and Pitt's students. Operations on Pitt's campus (and as a result, the food and beverage services that Sodexo provided) were different from March 2020 through June 2020 than they had been in the past, but the parties' contracts remained effective and unchanged. Sodexo now asserts breach of contract and equitable claims against Pitt to recover "in excess of $7 million" in damages that comprise a hodgepodge of purportedly unpaid invoices, improper deductions, and uncompensated costs.

The fundamental, and fatal, problem with Sodexo's claims is that the parties' relationship is governed by written contracts, and those contracts (a) **_do not_** entitle Sodexo to the relief it seeks; and (b) preclude implied contract and equitable claims. In fact, the Complaint concedes that Sodexo asked Pitt to agree to a different reimbursement model ("cost of operations") following pandemic-induced changes, and that Pitt "declined the offer." By the Complaint's own allegations, then, the parties' existing agreements remained in effect. Sodexo does not point to a single express provision of those agreements, which Sodexo elected **_not_** to attach to the Complaint, that supports **_any_** of the relief it now seeks. Those agreements existed, however, and they expressly cover the food and beverage services Sodexo was required to provide from March to June 2020. Pennsylvania law is clear that written contracts cannot unilaterally be augmented or changed with allegations of implied contracts or unjust enrichment about the same subject matter covered by those written contracts. Sodexo's Complaint should be dismissed in its entirety.

**FACTUAL BACKGROUND**

On March 11, 2020, the World Health Organization designated COVID-19 a "worldwide pandemic." The next day, the Governor of Pennsylvania ordered schools closed, and on March 19, issued a stay-at-home order. Compl., ¶ 27. By that date, Pitt and Sodexo were more than a dozen years into the Food Services Agreement dated July 1, 2007 (as amended) relating to Pitt's Oakland Campus (the "Oakland Agreement" or "OA"), and nearly four years into the Food Services Agreement dated June 10, 2016 relating to Pitt's Johnstown Campus (the "Johnstown Agreement," or "JA," and together with the Oakland Agreement, "the Agreements").[1] *See* Compl., ¶¶ 9-10, 55; *see also* Exs. A and B to Pitt's Motion to Dismiss, filed concurrently herewith.[2]

Pursuant to the OA, Sodexo was engaged "to manage and operate, during the Term of this Agreement, the University's Pittsburgh (Oakland) campus food service and beverage operations." OA, at 2. These management responsibilities included Sodexo's promises that it would "provide all administrative, management, consulting, and operational services necessary to fulfill its obligations and responsibilities as set forth herein," *id.*, and that Sodexo would "prepare, provide, furnish and serve meals, beverages, goods and other items to students, faculty, staff and guests of the University, in the facilities and manner so designated by the University." *Id.*, at 3.1. Sodexo

---

[1]     The continual negotiation and amendment of the Agreements is a result of two sophisticated entities (Pitt is a top-ranked university founded in 1787, while Sodexo is a limited liability company whose "sole member" is Marriott Corporation, a multinational hospitality and lodging chain, *see* Compl., ¶ 4) accounting for changes in student population and service models.
[2]     A court may consider any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Consideration of the OA and JA is appropriate because they define the business relationship between Pitt and Sodexo and are the agreements upon which Sodexo's Complaint is based. Pitt has filed a consent motion for leave to file the OA and JA under seal in light of their confidentiality provisions.

also stated that it would be "solely responsible for employees on its payroll," *id.* at 4.1.1, and "shall be responsible for purchasing all food, non-food inventory, services and supplies necessary to meet its food service and food-service related obligations," but that as a result "[t]itle to food, inventory and non-food supplies purchased by Sodexo shall belong to Sodexo." *Id.* at 4.2.  And critically, Pitt and Sodexo also explicitly agreed that Pitt's food service program was "subject to change." *Id.*, at 3.1.  Sodexo does not allege that any of these provisions was invalid.  Nor does it dispute that these provisions remained in effect.

The Agreements also contain detailed provisions defining Sodexo's compensation. Because the student population is in flux at certain times (the beginning and end of the semester, fall and spring breaks, etc.), the compensation structure reflected that flexibility, such that Sodexo was paid based on the number of students enrolled in the plan as of a certain times, multiplied by a daily rate. *See* OA, at 7.1, 7.2.  The daily rate was subject to adjustment, within an agreed range, depending on the number of students enrolled at differing points in the semester; the parties expressly acknowledged student populations might change rapidly at certain times, so estimates were permitted "during certain start-up, wind-down and interim periods of the academic year." *Id.*, 7.2.  Sodexo does not allege Pitt breached any of these payment provisions.

The payment provisions contained further flexibility to account for changes in dining service.  For example, Section 7.2.1 of the OA states that "[i]n the event the University requests operational changes that increase the overall cost structure for the Board Plan, and at the absolute and sole discretion of University, University may opt to pay Sodexo for agreed upon operational change charges at a time and payment schedule mutually agreeable to both parties."  The Complaint fails to address this provision, and there are no allegations that any operational changes related to COVID-19 "increased the ***overall cost structure***" of providing meals to students, such

as a sudden or dramatic increase in the amount of students.  To the contrary, Sodexo complains that its revenue stream was diminished because it had to "stock inventory and operate with sufficient staffing [at] various points of food service for the **small number of students** that remained on campus."  Compl., ¶ 15 (emphasis added).  Moreover, Sodexo does not allege that Pitt used its contractually granted discretion to agree to any charges associated with operational changes.

Sodexo also does not allege that either the OA or the JA contain any express provision requiring Pitt to reimburse Sodexo for any allegedly "additional" or unanticipated costs, or guarantee a minimum amount of reimbursement to Sodexo.

On these facts, Sodexo brings claims for breach of contract as to the Oakland Agreement (Count I) and the Johnstown Agreement (Count II).  The claims are legally infirm because Sodexo fails to identify any specific provision of either agreement that Pitt allegedly breached.  Moreover, in Counts III and IV, Sodexo advances legally deficient and factually inconsistent claims for breach of implied contract and unjust enrichment.  These claims necessarily are barred by the Agreements that Sodexo admits control the parties' relationship.  Even if they were not, however, the claims nevertheless fail because they are inadequately pled.  In short, all of Sodexo's claims fail because, despite the novelty of the pandemic, basic contract law controls and bars Sodexo from attempting to rewrite the agreements that it extensively negotiated and repeatedly re-affirmed just because a few weeks of one semester (as the parties' relationship was winding down) were not as profitable as Sodexo previously projected.

## <u>LEGAL STANDARD</u>

The standards governing a motion to dismiss under Rule 12(b)(6) are well-established.  "[T]he plaintiff must provide 'more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do.'"  *Icynene v. Next Generation Insulation, LLC*, 2020 WL

2198977, at *1 (E.D. Pa. May 6, 2020) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Instead, to survive a motion to dismiss, the plaintiff must plead that the "factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 545.  In evaluating the sufficiency of a complaint, the Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (internal quotation marks and citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Likewise, where disparities exist between pleadings and a document attached thereto, the document controls. *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 fn. 8 (3d Cir. 1994).

## ARGUMENT

**A.     Sodexo Fails to State a Claim for Breach of Contract Related to the Oakland Agreement (Count I).**

Contrary to the detailed, comprehensive contracts upon which Sodexo purportedly bases its clams – the original, pre-amendment OA, for example, runs 55 pages – Sodexo's allegations of breach of contract are sparse and conclusory.  For example, without any supporting facts, Sodexo asserts in a conclusory manner that it "performed under the Oakland Agreement" and then avers, in one paragraph and without citation to the underlying contract that Pitt breached the same Agreement in various ways.[3]  This is insufficient to state a claim, and thus dismissal is warranted.

---

[3]     Sodexo's lumping into a single paragraph of a single count the various and different ways in which Pitt purportedly breached the OA is itself a separate basis to dismiss Count I and, at a minimum, a reason to require Sodexo to re-plead. *See, e.g.,* Fed. R. Civ. P. 10(b) (requiring a

To state a claim for breach of contract under Pennsylvania law, a plaintiff must plead "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *Lenhart v. Huntington Ins., Inc*., 2016 U.S. Dist. LEXIS 75415, *16 (W.D. Pa. June 8, 2016), *report adopted*, 2016 U.S. Dist. LEXIS 83671 (W.D. Pa., June 28, 2016).  A breach of contract claim asserting only conclusory allegations without reference to specific provisions the defendant is supposed to have breached is "insufficient to survive a motion to dismiss." *Harris v. St. Johns Univ.*, 2014 US Dist. LEXIS 65452, *9-10 (E.D. Pa. May 13, 2014).

Sodexo fails to advance any alleged facts tying its conclusory assertions to the provisions of the Oakland Agreement.  First, without any reference to the specific services rendered or timing of services or billing, Sodexo baldly asserts that Pitt did not "timely pay invoices and expenses when owed."  Compl., ¶ 77.  The invoices appear to be related to "food services, including catering" over a two-year period, *id.* ¶35, but Sodexo does not allege any non-conclusory facts in support of this narrative.  Moreover, Sodexo fails to attach the invoices upon which these charges are based.  Without any factual allegations describing what provision was breached, why Pitt purportedly owes Sodexo, or the date(s) on which those charges arose or became due, the Complaint does little more conclusorily assert that Pitt failed to pay invoices.  Such threadbare allegations fall far short of the Rule 12(b)(6) standard, and Count I warrants dismissal accordingly.  *See, e.g., Iqbal*, 556 U.S. at 663 (requiring "sufficient factual matter" to "show" rather than merely aver that a pleader is entitled to relief).

---

party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances," and, to "promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."); *Donnelly v. Kole*, 2010 U.S. Dist. LEXIS 164740, *8 (E.D. Pa. Oct. 15, 2010) (directing plaintiff to amend complaint to set forth distinct causes of action in separate counts).

Sodexo also vaguely refers to allegedly improper deductions, although again these assertions are untethered to any contractual terms, and the monetary amounts cited are bereft of any specific factual averments, contract terms, or invoices.  This type of pleading is insufficient to survive a Rule 12 challenge.  *See, e.g., Twombly*, 550 U.S. at 555 (to survive a motion to dismiss, a plaintiff must allege enough factual averments to "put defendants on notice of the essential elements of Plaintiff's cause of action and raise a right to relief above the speculative level.").

More specifically, Sodexo alleges that it was improper for Pitt to deduct from its "Partial Payment" amounts that Sodexo itself was required under the OA to contribute to a renovation fund, but failed pay.  Sodexo claims it was entitled to "prorate" its contribution to the renovation fund as a result of declining revenue in the final weeks of the Spring 2020 semester.  Compl., ¶¶ 17-19.  The flaw with Sodexo's allegations is that the OA says nothing of the sort.  Sodexo fails to cite a single provision of the OA that entitles it to prorate its own payment obligations under the OA, or that prohibits Pitt from offsetting its own reimbursement obligation by amounts Sodexo failed to pay.

Sodexo's reliance on the OA's *force majeure* provision also fails to support a claim for breach by Pitt.  First, Sodexo does not allege that Renovation Fund payments were only owed if Sodexo surpassed a certain level of revenue.  Rather, the OA makes clear that Renovation Fund payments were mandatory and could be spent at Pitt's "absolute and sole discretion."  OA, § 7.13.  Further, the Complaint's own allegations show Sodexo was not prevented from "accru[ing] funds" for the 2020 payment because the accrual period began in September 2019.

Sodexo entirely fails to allege how it was prevented by the pandemic from accruing the necessary funds and making the payment it owed Pitt.[4]

Sodexo similarly alleges Pitt breached the OA by deducting from its "Partial Payment" $75,000 that Sodexo itself owed for equipment-related payments, but failed to pay. *See* Compl., ¶ 29. As with the renovation fund, Sodexo again fails to identify any contractual term relieving it of its obligation to make this payment for contract year ending June 2020 or prohibiting Pitt from offsetting its payment amount owed by this shortfall by Sodexo.

The same is true with respect to the Complaint's allegations related to "maintenance billing" costs. Here, Sodexo again points to no provision in the OA that permits it to withhold (or be refunded for) maintenance and repair expenses it is contractually required to pay simply because Sodexo unilaterally determines those expenses were "unnecessary."[5]

Sodexo's claim for catering deposit refunds, Compl. ¶ 31, also is conclusory, unsupported, and without citation to any contractual provisions or documentation of any kind. Because Sodexo's breach of contract claim draws no support from the contact upon which this claim is purportedly based, the aforementioned grievances fail to state a claim.

The largest amounts sought by Sodexo under Count I – for approximately $2.6 million in "inventory costs" and $2.9 million in "labor costs" – actually are based on an equitable theory: that Pitt "direct[ed] Sodexo to take actions during the pandemic for []Pitt's benefit, at a cost to Sodexo of millions of dollars, knowing that Sodexo would not and could not receive the benefit

---

[4]     Likewise, no provision of the Oakland Agreement guarantees Sodexo a profit (although there is a Profit Cap provision, Section 7.7), so for Sodexo's inability-to-accrue-revenue theory to carry the day, Sodexo would have to allege that its revenue for September 2019 through May 2020 was less than the $1,675,000 owed for the 2020 installment, which it does not do.

[5]     This position also contradicts with Sodexo's allegations throughout the Complaint that it not only provided services during and after March 2020 but that those services require Pitt to compensate Sodexo above and beyond contractually agreed-upon amounts.

of its bargain."  Compl., ¶ 77.  As with the other bases of Count I, this theory is not supported by, and is actually contrary to, the Oakland Agreement.  The costs for which Sodexo seeks compensation are costs which Sodexo agreed to undertake in the Agreements.  *See, e.g.,* OA, at §§ 4.1, 4.1.1 (Sodexo agreed to provide personnel and management and Sodexo "shall be solely responsible for employees on its payroll"); § 4.2. ("Sodexho shall be responsible for purchasing all food, non-food inventory, services and supplies necessary to meet its food service and food service-related obligations pursuant to this Agreement" and "Title to food, inventory and non-food supplies purchased by Sodexho [excluding smallwares and equipment] shall belong to Sodexho."); § 7.10 ("Food, paper and cleaning inventory shall be the property of Sodexho for the duration of the Agreement.").

Sodexo asserts that because its "revenue stream under the Oakland Agreement depended almost entirely on students residing on-campus" – a contractual arrangement to which Sodexo agreed after negotiation – Pitt now is obligated to reimburse Sodexo for costs Pitt never agreed to cover, and that Sodexo itself is expressly responsible for under the OA.  Compl., ¶ 77.  Such a position is untenable.  In fact, Sodexo alleges that it "offered to continue providing food services to []Pitt on a cost of operations model" and that Pitt "ultimately declined the offer."  Compl. ¶ 43.  Sodexo cannot credibly allege a breach of contract by Pitt for failing to pay costs Sodexo itself alleges Pitt "declined" to pay.

Sodexo's Complaint also lacks specific factual allegations as to how Sodexo allegedly incurred more than $5 million in additional "inventory" and "labor" costs when the Complaint simultaneously alleges that Pitt's operational plans changed from March 10, 2020, "over the course of the next week," Compl. ¶ 40, and further over the "next few weeks." Compl. ¶ 42.  It is implausible that Sodexo incurred more than $5 million in "additional costs," in a period of only a

"few weeks," when by Sodexo's own allegations it was serving far fewer students ("approximately 200 per day") than it would have been serving in other semesters.[6]

For all of the foregoing reasons, Sodexo has failed to adequately allege a claim for breach of contract and thus Count I warrants dismissal.

**B.    Sodexo Fails to State a Claim for Breach of Contract Related to the Johnstown Agreement (Count II).**

Sodexo's claim for breach of the Johnstown Agreement fails because Sodexo's assertions conflict with the terms of the Agreement it purports to enforce, and even if they did not, the Complaint fails to allege anything other than conclusory statements devoid of the requisite factual underpinnings.

In Count II, Sodexo alleges Pitt breached the Johnstown Agreement by not timely paying invoices; not re-negotiating an express, written contract; and failing to "make up" a shortfall in anticipated catering sales. *See* Compl., ¶¶ 82-83.  However, Sodexo fails to identify any actual breach by Pitt.  While the Complaint makes scant reference to specific provisions of the Johnstown Agreement, one of the few provisions Sodexo cites dooms its claims.  Specifically, Sodexo concedes that Section 7.15 of the JA states that, in the event of a change in the parties' agreed-upon assumptions regarding student population, anticipated sales, and operating days, "the financial terms shall be subject to adjustment."  Compl., ¶ 56.

As an initial matter, there are no well-pled allegations regarding variations in the parties' assumptions which might even implicate Section 7.15.  But even assuming, for the sake of argument, that the necessary changes in assumptions did occur, the Johnstown Agreement's

---

[6]    Pitt has repeatedly requested, as it has the right to do pursuant to Section 7.15 of the OA to "have access to, and the right to audit, examine and copy" Sodexo's books, documents and records that would substantiate Sodexo's purported additional inventory and labor costs and Sodexo has repeatedly refused to make that information available to Pitt, itself a breach of the OA by Sodexo.

language does not support Sodexo's position that Pitt was required to "make up" a purported

shortfall in sales.  Instead, the JA states only that financial terms would be "subject to

adjustment".  Sodexo does not allege that Pitt failed to adjust the JA's financial terms. Rather,

Sodexo alleges that Pitt failed to continue paying Sodexo the same amount, for the same number

of students Sodexo was feeding, ***prior to the pandemic-induced adjustments***.  The same is true

with respect to Sodexo's demand to recoup an alleged shortfall in catering sales.  Sodexo entirely

fails to allege how Pitt's unwillingness to continue paying Sodexo for feeding the same, pre-

pandemic number of students, and to pay in full for the assumed amount of catering, equates to a

breach because those financial terms are "subject to adjustment."

**C.     Sodexo Fails to State a Claim for Breach of Implied Contract (Count III).**

Sodexo's claim for breach of implied contract (Count III) should be dismissed because

this claim is contradicted by the express contracts Sodexo concedes exist, and even if it were not,

the Complaint lacks well-pled allegations sufficient to state an implied contract claim.

Under Pennsylvania law, "the essential elements of breach of implied contract are the

same as an express contract"; thus, a plaintiff must plead "(1) the existence of a contract,

including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant

damages."  *Lenhart*, 2016 U.S. Dist. LEXIS 75415, *16-19.  "Moreover, ***it is well-settled that***

***where an express written agreement has been validly entered into by both parties, a party may***

***not allege that an implied contract exists as to terms in the written agreement***."  *Id.* at *20

(emphasis added).

As with express contracts, an implied contract requires a mutual understanding, and so a

complaint that advances claims under an implied contract theory "must actually allege a fact

pattern which might show that there was a meeting of the minds and that there were mutual

undertakings." *Hirsch v. Schiff Benefits Group, LLC*, 2011 WL 1166127, at *3 (E.D. Pa. Mar. 28, 2011) (citing *In re Penn. Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987)).

First, this claim cannot stand in light of the express, written Agreements, which preclude any claim for an unwritten, implied contract covering the same subject matter. *See Lenhart*, 2016 U.S. Dist. LEXIS 75415, *20. Count III warrants dismissal for this reason alone.

Moreover, Sodexo's allegations not only ignore the existence of the Agreements but are actually contrary to the terms of the Oakland Agreement, which states that Sodexo's food service program is "subject to change," OA, § 3.1, and in the event of operational changes that increase the "overall cost structure" of providing meals to students, "at the ***absolute and sole discretion*** of [Pitt], [Pitt] ***may opt to pay*** Sodexho for ***agreed upon operational change charges*** at a time and payment schedule mutually agreeable to both parties." *Id.*, § 7.2.1 (emphasis added). Where the Oakland Agreement explicitly contemplates and requires an agreed-upon payment schedule if Pitt, in its sole discretion, decides that increased programmatic expenses warrant the same, an implied contract theory simply cannot exist.

Sodexo's allegations are also fatally conclusory and insufficient to support an implied contract theory. Sodexo alleges in Count III that Pitt "request[ing] and direct[ing] Sodexo to prepare for the students' return to campus and to shelter in place, to open and operate various, changing points of food service, and to be ready for rescheduled events from March through June 2020" gave rise to Sodexo's "expectation it would be compensated." Compl., ¶ 86. However, Sodexo fails to identify any specific promise upon which to base this claim and only references, almost in passing, unidentified "requests and directives." This is insufficient. *See Hart v. Univ. of Scranton*, 2012 WL 1057383, *3 (M.D. Pa. March 28, 2012) (noting "reliance on an implied contract theory does not relieve Hart of her obligation to identify the breach of a specific contract

provision" and dismissing claim because "Hart has not identified any 'specific identifiable promise that the [University] failed to honor.'") (quoting *Vurimindi v. Fuqua School of Business,* 435 Fed. Appx. 129, 133 (3d Cir. 2011)).

Sodexo's allegations of implied contract also are internally inconsistent with Sodexo's other allegation that it tried to reach agreement with Pitt on a "cost of operations" model but that Pitt "declined the offer."  Compl. ¶ 43.

In addition to failing to identify any promise, Sodexo also fails to allege facts supporting any purportedly inferred obligations, which is fatal to its claim.  Sodexo vaguely alludes to "the parties' conduct," Compl., ¶ 86, but does not allege any facts describing any specific course of conduct or discussions, or how any conduct gave rise to obligations Sodexo would not have normally undertaken in light of the Agreements.  This sort of conclusory allegation is inadequate to state a claim.  *See, e.g., Longnecker-Wells v. Benecard Servs*., 658 Fed. App'x. 659, 663 (3d Cir.) ("Plaintiffs here do not plead any company-specific documents or policies from which one could infer an implied contractual duty . . . . Merely claiming that an implied contract arose 'from the course of conduct' between Plaintiffs and [Defendant] is insufficient to defeat a motion to dismiss."); *Hirsch,* 2011 WL 1166127, at *3.  To survive a motion to dismiss, Sodexo must allege facts through which an agreement on obligations and compensation could fairly be inferred.  In light of the total absence of facts underpinning the conclusorily and vaguely alleged implied contract, Count III must be dismissed.

**D.     Sodexo Fails to State a Claim for Unjust Enrichment (Count IV).**

Sodexo's claim for unjust enrichment must be dismissed because (1) Sodexo admits in the Complaint that the parties' relationship is governed by comprehensive written agreements and (2) Sodexo fails to allege that the University was conferred with an unjust benefit.

It is well established under Pennsylvania law that "the doctrine of unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract." *Wilson v. Parker*, 227 A.3d 343, 353 (Pa. Super. 2020); *see also Yourway Transp., Inc. v. Sunovian Pharm., Inc.*, 2019 WL 1574315, at *3 (E.D. Pa. Apr. 11, 2019) (same). "Thus, an unjust enrichment claim cannot stand where it addresses conduct within the scope of the parties' agreement—even if the contract does not have a precise term governing the dispute at issue." *Hickey v. Univ. of Pittsburgh*, 535 F. Supp. 3d 372, 380 (W.D. Pa. 2021). Sodexo's conclusory allegations with respect to unjust enrichment describe nothing more than the obligations it promised to provide and for which it was compensated pursuant to the Agreements. Such allegations should be dismissed, even when pled in the alternative. *Id.* (granting motion to dismiss unjust enrichment claim pled in the alternative).

The central allegation of Count IV is that "Sodexo complied with UPitt's directives and performed services in good faith as part of a shared mission to take care of UPitt students and UPitt interests." Compl., ¶ 93. But Sodexo unambiguously agreed to do precisely that in the Agreements. *See, e.g.,* OA, 2 (Sodexo "shall provide all administrative, management, consulting, and operational services necessary to fulfill its obligations and responsibilities as set forth herein"); 3.1 (Sodexo "shall prepare, provide, furnish and serve meals, beverages, goods and other items to students, faculty, staff and guests of the University, in the facilities and manner so designated by the University"); 3.1 (Pitt's food service program is "subject to change").

Despite explicitly relying on the Agreements for Counts I and II, Sodexo reverses course in Count IV and claims that its "purchases of inventory, provision of food services," staffing, and merely "being ready for rescheduled events" somehow enriched Pitt at Sodexo's expense. *Id.*, ¶¶

- 14 -

92-95.  Moreover, Sodexo claims that it only performed these fundamental contractual duties "with the expectation that it would be compensated in the form of reimbursement of its costs or otherwise."  *Id.*, ¶ 93.  The problem with this theory is that Sodexo agreed to perform these tasks and was compensated for them by the plain terms of the Agreements.  Indeed, Sodexo admits that it was operating pursuant to the Agreements, *see id.*, ¶¶ 10, 12, rather than some additional extra-contractual arrangement, so this claim cannot stand in light of the Agreements.  Accordingly, Count IV should be dismissed.

Moreover, Sodexo does not, and cannot, sufficiently plead that the University's retention of funds was "unjust," as it must to sustain an unjust enrichment claim under Pennsylvania law. *D.A. Hill Co. v. Clevetrust Realty Inv'rs*, 573 A.2d 1005, 1010 (Pa. 1990) ("Having failed to establish the existence of a benefit, the [plaintiffs] could not recover on an unjust enrichment theory.").  It is well settled that for an unjust enrichment claim to survive, "a benefit must have been conferred for which no compensation was given."  *Myers Plumbing and Heating Supply Co. v. West End Fed. Sav. & Loan Ass'n*, 498 A.2d 966, 969 (Pa. Super. 1985).

First, the Complaint is devoid of any allegations that Sodexo did, in fact, incur additional expenses.  Rather, Sodexo merely asserts its actions amounted to "being ready" to serve varying levels of estimated students but that in the end it only had to provide food and services to a "small number of students."  Compl., ¶¶ 15, 88.  Likewise, Sodexo does not assert any facts as to any extra-contractual duties it undertook, or the amount or basis of compensation it purportedly was owed above and beyond the terms agreed upon between the parties.

Moreover, the Agreements dispel any possibility of sufficiently pleading any enrichment of Pitt, much less unjust enrichment.  It is a matter of public record of which this Court can take judicial notice that Pitt refunded its students pro rata amounts of the dining services fees they

paid.[7]  Sodexo fails to credibly allege how any benefit was unjustly received by Pitt in not paying Sodexo for alleged additional costs by Sodexo when Pitt itself already refunded dining services revenue to its students.  *See, e.g., Hickey*, 535 F. Supp. 3d at 381 (dismissing unjust enrichment claim and noting that "Plaintiffs do not allege that the University's costs were reduced by virtue of the change to online instruction or that it somehow profited from the COVID-19 pandemic at their expense.").

Pennsylvania law is clear – attempts to rewrite contract based on newfound dissatisfaction and efforts to 'even the score' following the cessation of a long-term contractual arrangement cannot support unjust enrichment claims.  *See Del. Cnty. Chamber of Commerce v. USI Ins. Servs., LLC*, 2013 WL 6847001, *10 (E.D. Pa. Dec. 30, 2013) ("where the parties have specifically agreed upon how to define and distribute their respective rights, duties, and expectations, they may not seek through the doctrine of unjust enrichment a better deal than they agreed to, 'regardless of how harsh the provisions of such contracts may seem in light of subsequent happenings.'"); *Third Nat'l Bank & Trust Co. v. Lehigh Valley Coal Co.*, 353 Pa. 185, 193 (Pa. 1945) (unjust enrichment "is not applicable to agreements deliberately entered into by the parties however harsh the provisions of such contracts may seem in the light of subsequent happenings."); *Zvonik v. Zvonik*, 435 A.2d 1236, 1245 (Pa. Super. 1981) ("The mere fact that the parties have made an improvident bargain will not lead a court to make unnatural implications or artificial interpretations.").  Because Count IV is an inappropriate attempt to rewrite the parties' agreements that is inadequately pled, it should be dismissed with prejudice.

---

[7]      *See* https://pittnews.com/article/156110/news/pitt-requests-students-move-out-of-residence-halls-will-issue-refunds-in-wake-of-pandemic/.

## **CONCLUSION**

Sodexo's Complaint should be dismissed in its entirety as contrary to the Agreements and the settled expectations of parties entering into contractual arrangements.  There is no dispute that extraneous events can complicate business dealings, but that is one of the many reasons parties enter into contractual arrangements – to ensure stability and predictability.  Sodexo's attempt to rewrite the parties' contracts in hindsight is unjustified, unsupported, and legally invalid, so it does not and cannot state a claim for breach of contract, breach of implied contract, or unjust enrichment.  As a result, the Complaint should be dismissed with prejudice.


Dated: February 28, 2022                                    Respectfully submitted,

                                                            */s/ Jeffrey M. Weimer*
                                                            Jeffrey M. Weimer
                                                            PA I.D. No. 208409
                                                            jweimer@reedsmith.com
                                                            Brian J. Willett
                                                            PA I.D. No. 319099
                                                            bwillett@reedsmith.com

                                                            REED SMITH LLP
                                                            225 Fifth Avenue, Suite 1200
                                                            Pittsburgh, Pennsylvania 15222
                                                            (412) 288-3131 office
                                                            (412) 288-3063 fax

                                                            *Counsel for University of Pittsburgh*

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel or parties of record electronically by CM/ECF.


*/s/ Jeffrey M. Weimer*
Jeffrey M. Weimer

*Counsel for Defendant, University of Pittsburgh*