**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SODEXO OPERATIONS, LLC, | ) | |
| | ) | No. 2:21-cv-1856 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Judge Robert J. Colville |
| | ) | |
| UNIVERSITY OF PITTSBURGH – OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, | ) | |
| | ) | |
| Defendant, | ) | |

**MEMORANDUM OPINION**

Robert J. Colville, United States District Judge

Before the Court is the Motion to Dismiss (ECF No. 11) filed by Defendant University of Pittsburgh – of the Commonwealth System of Higher Education (hereinafter "Pitt"). Pitt seeks dismissal with prejudice of all claims set forth in Plaintiff Sodexo Operations, LLC's (hereinafter "Sodexo") four-count Complaint. (ECF No. 1). Pitt's Motion to Dismiss has been fully briefed and is ripe for disposition.

## I. Introduction and Factual Background

### A. Procedural History

This breach of contract action was initiated by Sodexo on December 23, 2021, with the filing of a Complaint. Counts I and II allege breach of contract, Count III alleges breach of an implied contract, and Count IV alleges unjust enrichment.

Pitt filed its Motion to Dismiss (ECF No. 11) with a Brief in Support (ECF No. 12). Sodexo filed a Brief in Opposition (ECF No. 18). Pitt then filed its Reply Brief (ECF No. 27).

**B. Factual Background**

The instant action involves a contract dispute between Sodexo, who was responsible for providing certain food and beverage services to Pitt, and Pitt, who allegedly failed to pay for these services under the agreements set forth by the parties. Compl. ⁋ 1, ECF No. 1. In the Complaint, Sodexo sets fort the following factual allegations relevant to the Court's consideration of the Motion at issue.

**1. The Oakland Agreement**

On July 1, 2007, the parties entered into a written food services agreement that charged Sodexo with the duties to manage and operate food and beverage services for students, faculty, staff, and guests of Pitt's campus located in the Oakland neighborhood of Pittsburgh ("the Oakland Agreement"). *Id.* at ⁋ 9. This agreement was originally for a five-year term and was extended by the parties numerous times. *Id.* at ⁋ 10. On July 6, 2017, the parties extended the Oakland Agreement, for a final time, through June 30, 2020. *Id.*

In the Complaint, Sodexo raises various obligations under the Oakland Agreement it believes were breached by Pitt. First, Sodexo addresses the Renovation Fund under which Sodexo agreed to accrue funds every year for improvements to the dining areas. *Id.* at ⁋ 17. Specifically, Sodexo was to pay installments to Pitt for the Renovation Fund each year. *Id.* Under a Contract Adjustment dated June 28, 2017, the Renovation Fund was extended for three years, and Sodexo was to pay three installments in June 2018, June 2019, and June 2020 totaling $4,875,000. *Id.* Sodexo paid the June 2018 and June 2019 installments to the Renovation Fund as required. *Id.* at ⁋ 18. Sodexo then accrued a portion of the funds for the June 2020 installment to the Renovation but ceased accruing the remaining funds when Pitt suspended its on-campus operations in March 2020. *Id.* at ⁋ 19. As a result, Sodexo pro-rated the June 2020 installment for the months the food

service was in operation. *Id.* at ⁋ 24. However, Pitt deducted the full June 2020 installment of $1,625,000 from the total amount owed to Sodexo instead of the pro-rated amount of $1,107,105. *Id.* at ⁋ 28. Therefore, Sodexo alleges that Pitt owes Sodexo the difference of $567,895 because Pitt's action of directing students not to return to campus during the COVID-19 pandemic suspended Sodexo's obligation to accrue funds for the Renovation Fund. *Id.*

Next, Sodexo addresses the Equipment Fund contained within the Oakland Agreement. Importantly, the Equipment Fund was not extended by the parties beyond 2017 and was not in effect at the time the alleged breach of contract claim arose. Compl. ⁋ 29, ECF No. 1. Even so, Sodexo alleges that Pitt improperly deducted $75,000 in expenses for the Equipment Fund from the amount owed. *Id.* Sodexo alleges it is entitled to this $75,000. *Id.* at 30.

Third, Sodexo incurred $261,585 in catering deposits from outside groups for events that were scheduled or re-scheduled for dates following the expiration of the Oakland Agreement. *Id.* at ⁋ 31. Sodexo refunded $23,186 to these outside groups, which reduced the amount of catering deposits Sodexo was required to turn over to Pitt. *Id.* However, Pitt improperly deducted the full $261,585 in catering deposits from the amount owed and Sodexo alleges it is entitled to the difference of $23,186. *Id.*

Fourth, under the Oakland Agreement, Sodexo was to pay Pitt in twelve monthly installments for line items for Pitt's performance of maintenance and repairs of equipment, pest-control, and trash removal. *Id.* at ⁋ 32. These charges were dependent on the continued on-campus operation of Pitt and, as such, when on-campus operations were suspended, Sodexo's duty to pay these installments was also suspended. *Id.* at ⁋ 33. Even so, Sodexo paid the April and May 2020 installments in the amount of $60,270. *Id.* Sodexo alleges Pitt owes Sodexo reimbursement for these installments. *Id.* Further, Pitt improperly set-off the June 2020 installment, along with other

expenses, from the amount owed in the amount of $45,928. *Id.* at ⁋ 34. Sodexo further alleges it is entitled to this improper set-off of $45,928. *Id.*

Fifth, Pitt failed to pay approximately $12,465.49 in outstanding invoices for services performed under the Oakland Agreement from June 2018 to June 30, 2020. *Id.* at ⁋ 35. Sodexo asserts that Pitt's failure to pay these invoices constitutes a breach of its duty under the Oakland Agreement to pay invoices within thirty days of receipt. *Id.* Further, of the invoices paid by Pitt, Pitt failed to pay the 1.5% late charge that accrued related to these payments in an amount totaling $98,085.37. *Id.* at ⁋ 36. Lastly, Pitt improperly deducted or offset other amounts from the amount owed and failed to pay additional invoices, reimbursements, and late charges related to the Oakland Agreement. *Id.* at ⁋ 37.

**2. The Johnstown Agreement**

On June 10, 2016, Sodexo and Pitt entered into a separate written food services agreement for Sodexo to manage food and beverage services for students, faculty, staff, and guests at Pitt's campus located in Johnstown ("Johnstown Agreement"). Compl. ⁋ 55, ECF No. 1. The Johnstown Agreement expressly stated that its financial terms were based on three assumptions: (1) that the resident population was not less than 1,500 students; (2) that the annual catering/conference sales were not less than $850,000; and (3) that the operating days were not less than 207 boarding days. *Id.* at ⁋ 56.

The Johnstown Agreement also contains a Memorandum of Understanding dated August 26, 2019, which contains the Board Daily rates for the 2019-2020 school year based on the Board Plan. *Id.* at ⁋ 59. Exhibits to the instant motion assert that the Board Daily rates are the amounts owed to Sodexo by Pitt for each operating day based on the cost of the meals provided and are calculated based on the number of students and the meal plans selected by the students. *See* Ex. 2

to Pl. Opp'n, p. 22-23. The Board Daily rates for 2019-2020 were based on a resident population between 1,200-1,800 students and provided that the rates were to be negotiated if the resident population fell below 1,200 or rose above 1,800. Compl. ⁋ 59, ECF No. 1.

Sodexo provided food services under this Board Plan through May 31, 2020. *Id.* at ⁋ 60. Sodexo also billed under this Board plan through April 3, 2020; however, Pitt failed to pay Sodexo's March and April invoices. *Id.* at ⁋ 61, 64, 68. Further, Sodexo reached out in April 2020 to negotiate a new Board Daily rate based on the resident population falling below 1,200 students as a result of the pandemic. *Id.* at ⁋ 65-66. Pitt declined to negotiate under this new Board daily rate and requested Sodexo continue to provide services. *Id.* at ⁋ 66.

Lastly, from July 2019 to June 2020, the catering and conference sales totaled only $630,831, which was below the guaranteed annual minimum of $850,000. *Id.* at ⁋ 70, 72. As a result, Sodexo alleges it is entitled to the difference. *Id.* at ⁋ 72.

**3. Additional Charges Incurred**

Sodexo also incurred additional inventory and labor charges related to additional service requests made by Pitt during the pandemic. In March 2020, Pitt told Sodexo to prepare for the return of students to the Oakland campus by having three weeks of food inventory on hand; by stocking and opening the main dining halls as the primary points of food service; and by readying for the potential rescheduling of events. Compl. ⁋ 38, ECF No. 1. Sodexo complied with these requests. *Id.* at ⁋ 39. Pitt then changed its directives and announced that students were not to return to campus and that the dining halls were to be temporarily closed. *Id.* at ⁋ 40. Under this new directive, Pitt instructed Sodexo to open other points of service, other coffee and convenience stores, and to anticipate food service for over 4,000 international students. *Id.* Pitt further changed the expected student population from 4,000 students to 1,200-1,500 students. *Id.* at ⁋ 42. Sodexo

complied with these directives, which required expending hundreds of thousands of dollars in inventory costs and additional labor costs. *Id.* at ⁋ 41, 47, 49-50. In the end, Sodexo served only about 200 students per day. *Id.* Because of the changing directives, Sodexo offered to provide services on a cost of operations model, but Pitt declined. *Id.* at ⁋ 43.

Lastly, in April to May 2020, Pitt changed its protocols concerning access to various facilities and venues. *Id.* at ⁋ 45. Due to this change in protocols, Sodexo was unable to transfer its inventory to other venues or otherwise dispose of said inventory following Pitt's decision to not renew the Oakland Agreement. *Id.* at ⁋ 46. Therefore, Sodexo alleges it lost tens of thousands of dollars in inventory. *Id.*

## II. Legal Standard

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will likely prevail on the merits; rather, when considering a motion to dismiss, the court accepts as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, a complaint must provide more than labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 554). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Supreme Court of the United States has explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (quoting *Twombly*, 550 U.S. at 556) (internal citations omitted).

The United States Court of Appeals for the Third Circuit instructs that "a court reviewing the sufficiency of a complaint must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). The court explained:

> First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

*Connelly*, 809 F.3d at 787. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In addition to reviewing the facts contained in the complaint, a court may consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). When a document integral to or relied upon in the complaint is included, the court may also consider that document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. Discussion

Pitt seeks dismissal of Counts I, II, III, and IV of the Complaint. Sodexo argues Pitt's Motion to Dismiss should be denied as to these claims.

### A. Count I (Breach of the Oakland Agreement)

To state a claim for breach of contract under Pennsylvania law, the plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. 2006).

We now turn to Pitt's arguments that Sodexo's allegations are sparse and conclusory, and, therefore, fail to provide adequate factual support for its claim for breach of the Oakland Agreement. Br. in Supp. 5, ECF No. 12. Specifically, Pitt argues Sodexo fails to tie its conclusory assertions to specific provisions in the Oakland Agreement. *Id.* at 6.

To begin, Sodexo is not required to set forth the specific provisions of the Oakland Agreement it alleges Pitt breached to state a claim for breach of contract under the Federal Rules of Civil Procedure. *See Travelers Cas. & Sur. Co. of Am. v. A.G. Cullen Const., Inc.*, No. CIV. A. 07-0765, 2008 WL 4816477, at *10 (W.D. Pa. Nov. 4, 2008) (citing *Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. CIV. A. 06-2256, 2007 WL 2459349, at *8 (D.N.J. Aug. 24, 2007) for the proposition that "the Federal Rules of Civil Procedure do not require a plaintiff to allege specific provisions violated in the contract.").

Further, the Court finds Count I has sufficient factual support to survive a motion to dismiss, and that the factual matters as alleged give rise to a reasonable inference that Pitt breached the Oakland Agreement. Sodexo sufficiently alleges Pitt was required to pay invoices, including a late fee on those invoices, under the Oakland Agreement, and that Pitt failed to pay these

invoices. Sodexo further alleges Pitt failed to act under the implied agreement of good faith under the Oakland Agreement when directing Sodexo to take actions during the pandemic.

In light of the above, the Court will deny Pitt's motion to dismiss as to Count I.

**B. Count II (Breach of the Johnstown Agreement)**

As stated above, in *supra* III.A., to state a claim for breach of contract under Pennsylvania law, the plaintiff must plead the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resulting damages. *Lackner*, 892 A.2d at 30.

Pitt argues that Sodexo's breach of contract claim concerning the Johnstown Agreement conflicts with the terms of the Johnstown Agreement. Br. in Supp. 10. Specifically, Pitt alleges Sodexo's interpretation of the Johnstown Agreement's language in Article 7.15 that the financial terms at issue would be "subject to adjustment" is incorrect. *Id.* at 11.

Sodexo disagrees with Pitt's interpretation and again states that Pitt was required to make an adjustment to financial terms under Article 7.15. Br. in Opp'n 9, ECF No. 18. Further, Sodexo cites to allegations in its Complaint of Pitt's other alleged breaches under the Johnstown Agreement, including Pitt's failure to pay invoices and failure to negotiate the Board Plan under the Memorandum of Understanding dated August 26, 2019. *Id.*

As to the parties' conflicting interpretations of when financial terms are subject to adjustment under Article 7.15 and the parties' duties under Article 7.15, the Court is not in a position "to determine whose interpretation of the relevant provision is correct or even whether the provision is sufficiently ambiguous to warrant referral to the fact-finder." *Biovail Corp. Int'l v. Hoechst Aktiengesellschaft*, 49 F. Supp. 2d 750, 775 (D.N.J. 1999); *see Hullett v. Towers, Perrin, Forster & Crosby, Inc.*, 38 F.3d 107, 111 (3d Cir. 1994) ("[D]etermination [of] whether

the language of an agreement is unambiguous may not be possible without examining the context in which the agreement arose."); *Masciantonio v. SWEPI LP*, No. 4:13-cv-0797, 2014 WL 4441214, at *6 n.5 (M.D. Pa. Sept. 9, 2014) ("[I]f a writing is not ambiguous, it is appropriate for a district court to resolve the issue of contract interpretation as a matter of law, but typically on summary judgment rather than a motion to dismiss."). At this early stage of the litigation, and in the absence of fully developed briefing on this point, a motion to dismiss is premature at this juncture.

As for Sodexo's remaining allegations that Pitt failed to pay invoices and failed to negotiate the Board Plan under the Memorandum of Understanding dated August 26, 2019, *see* Compl. ¶¶ 59-72, ECF No. 1, the Court finds these allegations have sufficient factual support to survive a motion to dismiss, and that the factual assertions as pled and if believed by the factfinder, give rise to a reasonable inference that Pitt breached the Johnstown Agreement. The Court will deny Pitt's motion to dismiss as to Count II.

**C. Count III (Breach of an Implied Contract)**

Under Pennsylvania law, the elements of breach of an express contract are: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999). The essential elements of a claim for breach of an implied contract are the same as a claim for breach of an express contract, except that the contract is implied through the parties' conduct, rather than expressly written. *Highland Sewer & Water Auth. v. Forest Hills Mun. Auth.*, 797 A.2d 385, 390 (Pa. Commw. 2002). Though intent can be gleaned from the parties' "ordinary course of dealing[s]," it is well-settled that "naked assertions devoid of further factual enhancement" fail

to state an actionable claim. *Liss & Marion P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009); *Ashcroft*, 556 U.S. at 678.

Sodexo's facts as alleged, assert that Pitt requested Sodexo provide additional work, labor, and effort to comply with new pandemic directives to account for the changing environment on the Oakland Campus. Compl. ⁋⁋ 38-42, 49-50. Sodexo complied with these directives and in turn offered Pitt that it would provide these additional services on a "cost of operations model." *Id.* at ⁋⁋ 43, 52. Sodexo continued to perform for weeks, while Pitt considered Sodexo's proposal. Pitt, ultimately, denied this request for payment on a cost of operations model but, as alleged by Sodexo, Sodexo still performed these directives in good faith and incurred additional costs. *Id.* at ⁋⁋ 43, 47-48, 52-54.

Based on the above facts, the Court finds Sodexo has alleged sufficient facts to support a finding of an implied contract. Sodexo has alleged the existence of a contract based on the conversations between Sodexo and Pitt concerning the additional work to be performed and the compensation for that work.

Further, while Pitt argues the terms of the Oakland Agreement accounted for its additional directives to Sodexo and the payment for Sodexo's additional work, Brief in Supp. 12, Sodexo disputes this point. Brief in Opp'n. 10-11. The Court is not in the position, at this early stage of litigation, and particularly in the absence of discovery on this point, to determine whose interpretation of the scope of the Oakland Agreement, or the nature of the requested additional work is correct. Therefore, the Court will deny Pitt's motion to dismiss as to Count III.

**D. Count IV (Unjust Enrichment)**

Pitt asserts that Sodexo's unjust enrichment claim at Count IV should be dismissed because (1) the parties' relationship is governed by a written agreement and (2) Sodexo has failed to allege Pitt was conferred with an unjust benefit.

To state a claim for unjust enrichment under Pennsylvania law, a plaintiff must allege (1) that the plaintiff conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under circumstances in which it would be inequitable to do so without paying for the benefit. *Karden Constr. Servs., Inc. v. D'Amico*, 219 A.3d 619, 628 (Pa. Super. 2019).

In Pennsylvania, "the doctrine of unjust enrichment is inapplicable when the relationship between parties is *founded* upon a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton*, 586 Pa. 513, 895 A.2d 1250, 1254 (2006) (emphasis added). Even where a contract would preclude recovery under unjust enrichment, a plaintiff may plead a claim for unjust enrichment in the alternative where "(i) the contract at issue covers only a part of the relationship between the parties, or [where] (ii) the existence of a contract is uncertain or its validity is disputed by the parties." *Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (footnotes omitted) (citations omitted).

While Sodexo asserts its unjust enrichment claim was brought in the alterative, Br. in Opp'n 13-14, ECF No. 18, Sodexo has failed to show there is a dispute as to whether a valid, enforceable contract exists. *See Grudkowski v. Foremost Ins. Co.*, 556 Fed. Appx. 165, 170 (3d Cir. 2014) (holding the district court properly dismissed plaintiff's unjust enrichment claim where a valid contract existed); *see also Montanez v. HSBC Mortg. Corp. (USA)*, 876 F. Supp. 2d 504, 516 (E.D. Pa 2012) (dismissing unjust enrichment claim where there was no dispute that the

"contract was valid and enforceable"); *cf. Premier Payments Online, Inc. v. Payment Systems Worldwide*, 848 F. Supp. 2d 513, 527 (E.D. Pa. 2012) (finding that where the defendant disputed there was a valid contract between the parties, it was improper to dismiss the unjust enrichment claim). Instead, here, the parties agree that there exists a valid contract governing their relationship – the Oakland Agreement – and neither party claims the contract was invalid or unenforceable. As such, the Court grants Pitt's motion to dismiss as to Count IV.

**IV. Conclusion**

For the reasons discussed above, the Court will deny Pitt's Motion to Dismiss as to Counts I, II, and III and will grant Pitt's Motion to Dismiss as to Count IV with prejudice, as any amendment thereto would be futile. An appropriate Order of Court will follow.

BY THE COURT:

*/s/ Robert J. Colville*_____
Robert J. Colville
United States District Judge

DATED: February 15, 2023

cc: All counsel of record